IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THOMAS JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25-CV-232 |
| | ) | |
| SN SERVICING CORPORATION | ) | |
| and U.S. BANK TRUST NATIONAL | ) | |
| ASSOCIATION, as trustee for LB- | ) | |
| Ranch Series V Trust | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Catherine C. Eagles, Chief District Judge.

Thomas Johnson entered into a mortgage loan agreement to finance the purchase of his home in 2016. In 2022, he and the loan servicer, acting on behalf of the lender, agreed to a loan modification. For reasons not apparent on the record, the mortgage holder thereafter quickly and repeatedly changed the servicer responsible for collecting Mr. Johnson's mortgage and escrow payments and managing modifications, finally landing with the defendant, SN Servicing Corporation. These changes led to what can be characterized at best as confusion and misunderstanding and then to a lawsuit.

Settlement of that lawsuit did not ultimately resolve the problems, as SN has arguably remained indifferent to meeting its obligations under the loan modification and the settlement agreement. Mr. Johnson now sues SN, alleging that its conduct breached various promises it made under the settlement agreement and constituted unfair and deceptive trade practices. SN moves for summary judgment on all claims. Because

disputed questions of material fact remain and SN has otherwise not established

entitlement to judgment as a matter of law, summary judgment will be denied.

### I.      Overview

In 2016, Mr. Johnson bought a home, financed with a mortgage loan.  After he fell

behind on his payments, the loan servicer at the time, Community Loan Servicing,

offered to capitalize those outstanding payments into the existing principal.  Mr. Johnson

agreed.  Servicing duties were then transferred to another servicer, a business called "Mr.

Cooper."  Mr. Cooper and a subsequent servicer, the defendant in this case, SN Servicing,

pursued collection based on the original loan terms rather than the modification

agreement.  After Mr. Johnson filed suit in September 2023, the parties to that case,

including Mr. Cooper and SN, quickly settled, with SN agreeing to abide by the terms of

the 2022 modification agreement.

In June 2024, Mr. Johnson sued SN[1]  again, alleging that it had breached the

settlement agreement by continuing to pursue collection of costs that had been either

capitalized or waived under the earlier agreements and that SN's conduct amounted to a

breach of its implied duty of good faith and fair dealing and constituted unfair and

deceptive trade practices under North Carolina law.  Specifically, he alleges that SN:

1.  Continued to charge him for tax and insurance costs that were waived under the

    settlement agreement;

---

[1] Mr. Johnson has also sued U.S. Bank Trust N.A. as trustee for the LB-Ranch Series V Trust that owned his promissory note and deed of trust.  Doc. 40 at ¶ 12.  The parties agree that SN is the agent of U.S. Bank and its liability as principal is coextensive with SN's.  Doc. 64 at 27–30; Doc. 67 at 4 n.1.  For simplicity, the Court will refer only to SN.

2. Demanded payment for those waived costs without investigating whether they were properly assessed;

3. Charged him for SN's legal fees when he disputed SN's demands; and

4. Marked his account as disputed, which prevented him from refinancing.

## II.    Facts

In 2016, Mr. Johnson purchased a home with a mortgage-backed loan secured by a deed of trust. *See* Doc. 40-2.[2]  Under the terms of the mortgage, Mr. Johnson's loan servicer agreed to advance the cost of his homeowner's insurance and property taxes as they became due, and Mr. Johnson agreed to repay the advances as a part of his monthly mortgage payment.  Doc. 40-2 at 3–4.  The mortgage referred to these payments as "Funds for Escrow Items."  *Id.* at 2–3.

By May 2022, Mr. Johnson had accumulated some $14,000 in "unpaid installments, interest, late charges, fees and costs, and . . . advances for unpaid property taxes and/or insurance premiums."  Doc. 66-8 at 1.  His loan servicer at the time, Community Loan Servicing, offered to capitalize the outstanding amount into the remaining principal through a loan modification agreement, and Mr. Johnson accepted. *Id.* at 1–2.

In September 2023, Mr. Johnson sued Community Loan and several subsequent loan servicers, including SN, the defendant here, alleging violations of the modification

---

[2] Mr. Johnson attached multiple exhibits to his amended complaint.  The parties rely on these exhibits throughout their briefing and do not dispute the authenticity or accuracy of these exhibits.  *See, e.g.*, *State Auto Prop. & Cas. Ins. Co. v. Wohlfeil*, 889 F. Supp. 2d 799, 802 (N.D.W. Va. 2012).

3

agreement. *Johnson v. Cmty. Loan Servicing, LLC* (*Johnson I*), No. 23-CV-788 (M.D.N.C.), Doc. 1. The parties quickly settled, *see* Doc. 40-1; *Johnson I*, Doc. 9.

In the settlement agreement, SN promised to waive "all costs and fees, including attorneys' fees, associated with Foreclosure" and "all costs and late fees associated with the Note for the time period of May 1, 2022 to the present [December 2023]." Doc. 40-1 at 1. It also promised to service Mr. Johnson's loan according to the terms of the modification agreement. *Id.*

Shortly after the settlement, in January 2024, SN informed Mr. Johnson that he still owed almost $16,000 in escrow payments. Doc. 66-6 at 2. To pay off the shortage, SN demanded that Mr. Johnson pay another ~$1,300 per month on top of his regular monthly payment. *Id.* at 3.

Mr. Johnson, through his attorney, disputed that accounting in a letter to SN. Doc. 40-5. Mr. Johnson asserted that SN was breaching the terms of the settlement agreement and the modification agreement by including amounts in his escrow balance that SN and its predecessors had waived. *Id.* at 2–3. SN responded that it was servicing the loan according to a 2021 modification agreement and that the records it received when it started servicing the loan indicated that Mr. Johnson had a negative escrow balance. Doc. 40-6 at 1.

Mr. Johnson then sued SN again. *See* Doc. 1-1. After he filed this lawsuit, SN sent Mr. Johnson multiple notices that it was assessing the cost of defending the case to his account. Doc. 66-9. The legal fees totaled over $15,000. *Id.* SN had also assessed

legal fees against Mr. Johnson during the first lawsuit but waived them as a part of the settlement agreement.  Doc. 40-1 at 1; Doc. 61-1 at 37.

Additional facts, disputed and undisputed, will be discussed when relevant to particular issues.

### III.    Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In analyzing a summary judgment motion, courts "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party."  *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023).  The moving party has the initial burden of demonstrating the absence of any material issue of fact; once the moving party meets its initial burden, the non-moving party must come forward with evidentiary material demonstrating the existence of a genuine issue of material fact requiring a trial.  *Id.* at 709–10; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### IV.    Analysis

Mr. Johnson has brought three claims against SN:  (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing; and (3) unfair and deceptive trade practices.  Doc. 40 at ¶¶ 71–99.  SN moves for summary judgment on all claims.  Doc. 60.

### A.  Breach of Contract

The elements of breach of contract are (1) the existence of a contract and (2) a breach of the terms of that contract. *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). The parties agree that the 2022 loan modification and the 2023 settlement agreement are contracts, so their dispute turns on the element of breach.

Mr. Johnson contends that SN breached the 2023 settlement agreement in at least two ways. First, he asserts that SN included in his starting balance escrow advances from before the modification agreement, despite the modification agreement's provision that such costs would be capitalized into his principal balance and SN's promise to follow the terms of the modification agreement. *See* Doc. 40-1 at 1–2. Second, it sought to collect ~$15,000 in escrow advances made from May 2022 until December 2023, despite SN's promise in the settlement agreement to waive "all costs and late fees associated with the Note for the time period of May 1, 2022 to the present [December 2023]." *See id.* at 1. SN asserts that the terms of the settlement agreement unambiguously permitted it to collect payment for escrow advances made by previous servicers. So whether SN breached depends on the meaning of the settlement agreement and the modification agreement.

"When the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court." *Hagler v. Hagler*, 319 N.C. 287, 294, 354 S.E.2d 228, 234 (1987). "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Galloway v. Snell*, 384 N.C. 285, 288, 885 S.E.2d 834, 836 (2023)

6

(cleaned up). "An ambiguity can exist when, even though the words themselves appear clear, the specific facts of the case create more than one reasonable interpretation of the contractual provisions." *Id.* (cleaned up). "If a written contract is ambiguous, the contract's meaning and effect is a factual question for the jury and parol evidence may be introduced not to contradict, but to show and make certain what was the real agreement between the parties." *Id.* (cleaned up).

### 1. 2022 Modification Agreement

The modification agreement states that Mr. Johnson's new principal balance was "$542,258.00, including the existing unpaid principal balance of $527,988.79 plus the capitalized unpaid installments, interest, late charges, fees and costs, and if applicable, advances for unpaid property taxes and/or insurance premiums Increased by $14,269.21." Doc. 40-1 at 2. The unambiguous meaning of that provision is that any "advances for unpaid property taxes and/or insurance premiums," i.e. escrow items, *see* Doc. 40-2 at 3, were rolled into Mr. Johnson's principal balance. And in the settlement agreement SN promised to "[h]onor the terms of the [2022] Modification" agreement. Doc. 40-1 at 1. Thus, any attempt to collect on escrow advances made before the June 2022 modification agreement would be a breach of SN's obligations under the settlement agreement.

As Mr. Johnson points out, there is evidence from which it can be reasonably inferred that at least some of Mr. Johnson's negative starting escrow balance came from advances made before June 2022. *See* Doc. 40-9 at 3. Therefore, summary judgment will be denied as to SN's alleged breach of its promise to honor the terms of the modification agreement.

SN asserts that it took the balance passed on from the previous servicer at face value, but that attempt to pass the buck is unavailing. Intent to breach is not an element of a breach of contract claim. *See Poor*, 138 N.C. App. at 26. Nothing in the settlement agreement explicitly allows SN to rely on the previous escrow balance provided by earlier servicers, and SN had its own contractual duties to perform. Since a jury could find that SN attempted to collect escrow advances that had already been rolled into the principal or should have been, or that were waived, SN cannot avoid a trial.

### 2. 2023 Settlement Agreement

The settlement agreement states that SN will "[w]aive all costs and late fees associated with the Note for the time period of May 1, 2022 to the present." Doc. 40-1 at 1. That provision is ambiguous, because the terms of the settlement agreement[3] provide no basis for determining which fees are "associated with the Note" and which are not. SN's asserts that escrow advances are not "fees associated with the Note" because escrow fees are not mentioned in the promissory note itself. *See* Doc. 68. But the phrase "associated with" could reasonably encompass fees arising from the deed of trust rather than the note, given the close connection between the two documents. *See Associated*, Merriam-Webster, https://www.merriam-webster.com/dictionary/associated (last visited

---

[3] The parties have provided only three pages from the settlement agreement. *See* Doc. 40-1. "[I]ntent is not derived from a particular contractual term but from the contract as a whole." *North Carolina v. Philip Morris USA Inc.*, 363 N.C. 623, 631–32, 685 S.E.2d 85, 90 (2009) (cleaned up). At summary judgment a court can only consider the evidence before it. Fed. R. Civ. P. 56(c). Accordingly, the Court assumes for purposes of resolving this motion that the pages of the contract in the record include everything relevant to determining the intent of the parties and the meaning of the contractual language.

8

August 10, 2026) (giving the definition "related, connected, or combined together"). Indeed, the promissory note contemplates the existence of deed of trust as a security instrument, Doc. 68 at 3, and the promises Mr. Johnson made in the deed of trust all relate to either paying off the promissory note or keeping the promissory note adequately secured. *See* Doc. 40-2. On the one hand, it might be reasonable to read the term "fees associated with the Note" to only include fees expressly provided for in the note. But on the other hand, it might also be reasonable to read the same term to include, for example, fees for "Escrow Items" that must be paid to keep the note adequately secured. *See id.* at 3–4. After all, the dispute settled by the settlement agreement concerned both mortgage payments and escrow payments. Because the provision of settlement agreement is susceptible to more than one reasonable interpretation, it is ambiguous. *Galloway*, 384 N.C. at 288. So its meaning is a question of fact. *Id.*

The meaning of an ambiguous provision can be resolved through reference to parol evidence. *Id.* But throughout its briefing, SN consistently maintains that the provisions of the settlement agreement are unambiguous, and it makes only a single passing reference to the content of the settlement negotiations. Doc. 61 at 17–18 & n.8. To the extent SN asserts that parol evidence clarifies the ambiguity in its favor, its argument is underdeveloped and warrants no consideration. *See Penegar v. Liberty Mut. Ins. Co.*, 115 F.4th 294, 301 n.7 (4th Cir. 2024) (explaining that "perfunctory and underdeveloped arguments are waived" (cleaned up)).

Summary judgment will be denied as to SN's alleged breach of its promise to waive the cost of pre-settlement agreement escrow advances.

9

### B.     Breach of the Implied Covenant

When "a party's claim for breach of the implied covenant of good faith and fair dealing is based upon the same acts as its claim for breach of contract, courts treat the former claim as 'part and parcel' of the latter." *Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 38–39, 817 S.E.2d 247, 256 (2018) (cleaned up).  Both parties here agree that Mr. Johnson's implied covenant claim is "part and parcel" of his breach of contract claim.  Doc. 61 at 18; Doc. 64 at 25–26; Doc. 67 at 13–14.  Because summary judgment will be denied as to the breach of contract claim, it will also be denied as to this claim.

### C.     Unfair and Deceptive Trade Practices

The elements of an unfair and deceptive trade practices claim under N.C. Gen. Stat. § 75-1.1 are:  (1) the defendant engaged in an unfair or deceptive act or practice, (2) which was in or affecting commerce, and (3) which proximately caused injury to the plaintiff.  *RD & J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500 (2004).  "Although it is a question of fact whether the defendant performed the alleged acts, it is a question of law whether those facts constitute an unfair or deceptive trade practice." *Id.*

"The relevant gauge of an act's unfairness or deception is the effect of the actor's conduct on the marketplace." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009) (cleaned up).  "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981).  "Stated another way, a party is guilty of an unfair act

10

or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." *Carcano*, 200 N.C. App. at 172 (cleaned up).

As previously discussed, viewing the facts in the light most favorable to Mr. Johnson, there is evidence that SN breached the 2023 settlement agreement. *Supra* at 7–10. "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to support a claim under N.C.G.S. § 75-1.1," *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992), but it can constitute an unfair or deceptive act or practice when the breach includes aggravating or egregious circumstances. *See Poor*, 138 N.C. App. at 28. For example, "lying and concealing a breach combined with acts to deter further investigation" can constitute aggravating and egregious behavior. *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 121 (4th Cir. 2021).

There is sufficient evidence from which a jury could find that SN engaged in multiple acts that would elevate the alleged breach of contract into an unfair or deceptive trade practice.

Almost immediately after the settlement agreement, SN told Mr. Johnson that his account had an escrow shortage of ~$15,000. Doc. 66-6 at 2. Mr. Johnson disputed that amount in a letter he sent to SN's general counsel, explaining in detail why he believed that SN was in breach of the settlement agreement. *See* Doc. 40-5. SN responded that it disagreed and that it would try to collect the debt. *See* Doc. 40-6. But its only basis for its position was the unverified account history it received from a previous servicer. *See* Doc. 61-1 at 12; Doc. 66-1 at 7. Despite its promise to abide by the loan modification

11

agreement, SN undertook no investigation when Mr. Johnson's letter brought the discrepancy to SN's attention.  *See* Doc. 66-1 at 7.

The evidence would also reasonably support an inference that SN falsely represented the character, extent, or amount of a debt against Mr. Johnson.  *See* Doc. 40-6.  That conduct constitutes a per se unfair and deceptive trade practice and violates established public policy.  *See Forsyth Mem'l Hosp., Inc. v. Contreras*, 107 N.C. App. 611, 614, 421 S.E.2d 167, 169 (1992).  Mr. Johnson need not "show fraud, bad faith, deliberate or knowing acts of deception, or actual deception" on the part of SN. *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981).  It is sufficient that SN's acts "possessed the tendency or capacity to mislead or created the likelihood of deception."  *Id.* (cleaned up).

From at least the time Mr. Johnson disputed the amount he owed to SN, *see* Doc. 40-5, there is no evidence that SN made any effort to determine if the previous loan servicer had in fact appropriately assessed the escrow fees and complied with the loan modification agreement.  *See* Doc 66-1 at 7–9.  Instead, it abdicated its own contractual duties and stood by its position, arguably without justification, only offering to spread out Mr. Johnson's repayment and promising not to foreclose on his home.  *See* Doc. 61-1 at 41, 50.  A jury could find that SN continued to misrepresent the amount owed even when Mr. Johnson was attempting to refinance his home and when he ultimately had to sell his home.  *See* Doc. 65 at ¶ 21.  A lender continuing to misrepresent the amount owed by a borrower with no justification and contrary to a contractual obligation is the type of conduct that possesses the capacity to mislead and is offensive to public policy.

12

As for the legal fees SN charged Mr. Johnson, they were assessed after Mr. Johnson initiated suit over the disputed escrow amounts. *See* Doc. 40-8. SN contends that it assessed these legal fees by mistake, Doc. 61 at 12, but it made that "mistake" repeatedly over the course of several months. *See* Doc. 40-8. And SN had also assessed legal fees against Mr. Johnson during the first lawsuit and only waived them when the parties settled. Doc. 40-1 at 1; Doc. 61-1 at 37. A jury could reasonably find that SN used unjustified legal fee assessments to chill complaints about its servicing methods.

Considered as a whole, there is evidence to support a finding that SN engaged in conduct that amounted to "lying and concealing a breach combined with acts to deter further investigation." *Foodbuy*, 987 F.3d at 121. Summary judgment will be denied as to the unfair and deceptive trade practices claim.

## V.      Conclusion

SN disputes Mr. Johnson's version of events. But he has put forward sufficient evidence to support each essential element of his claims. It will be up to a jury to resolve the parties' factual disagreements. The motion for summary judgment will be denied.

It is **ORDERED** that the defendants' motion for summary judgment, Doc. 60, is **DENIED**.

This the 12th day of August, 2026.

_____
UNITED STATES DISTRICT JUDGE

13